IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARY'S HOUSE, INC., Jane Doe 1 through 8, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:12cv169 |
| STATE OF NORTH CAROLINA; NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN RESOURCES; NORTH CAROLINA DIVISION OF AGING AND ADULT SERVICES; NORTH CAROLINA OFFICE OF ECONOMIC OPPORTUNITY; BEVERLY PERDUE, Governor of the State of North Carolina (in her official capacity); ALBERT DELIA, Acting Secretary, North Carolina Department of Health and Human Services (in his official capacity); DENNIS STREETS, Director, North Carolina Division of Aging and Adult Services (in his official capacity); MARTHA ARE, Homeless Policy Specialist, North Carolina Division of Aging and Adult Services (in her official capacity); VERNA BEST, Director, Office of Economic Opportunity (in her official capacity); and MICHAEL LEACH, Homeless Programs Coordinator, Adult Services Section, North Carolina Division of Aging and Adult Services (in his official capacity) | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiffs Mary's House, Inc. ("Mary's House"), a non-profit organization providing housing and treatment to homeless women recovering from substance abuse, and eight Jane Does who are former or current residents of Mary's House challenge the State of North Carolina's decision to eliminate funding to them. Plaintiffs seek declaratory and injunctive relief, as well as damages, pursuant to 42 U.S.C. § 1983 and the doctrine of Ex parte Young, 209 U.S. 123 (1908), and allege violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. ("FHA"), section 504 of the Rehabilitation Act, 29 U.S. § 794 ("RA"), and the U.S. Constitution, including the Supremacy Clause and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Defendants are the State of North Carolina, the North Carolina Department of Health and Human Services ("DHHS"), the North Carolina Division of Aging and Adult Services of DHHS ("DAAS"), and the North Carolina Office of Economic Opportunity ("OEO"), as well as several state officials in their official capacities: Beverly Perdue, Governor; Albert Delia, Acting Secretary of DHHS; Dennis Streets, Director of DAAS; Martha Are, Homeless Policy Specialist at DAAS; Verna Best, Director of OEO; and Michael Leach, Homeless Programs Coordinator at DAAS.

Before the court is Defendants' motion to dismiss the complaint based on lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. (Doc. 21.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    BACKGROUND

Mary's House is a homeless shelter and licensed substance abuse rehabilitation center ("SARC") serving women and their children in Greensboro, North Carolina. It has applied for and received funding through the Emergency Shelter Grant ("ESG") program every year since 2005. Under the ESG program, states apply to the federal Department of Housing and Urban Development ("HUD") for funding by submitting a consolidated plan. HUD distributes the ESG funds to states, who then distribute the ESG funds to grantees such as Mary's House. Defendants are responsible for distributing the ESG funds in North Carolina, which is done through a non-competitive process in which any qualified homeless shelter may participate.

In December 2009, Mary's House was notified by letter that Defendants had decided to change the definition of "shelter" for the ESG program, specifically to exclude licensed SARCs. Exactly when Defendants began implementing the new definition is disputed, but it is undisputed that Defendants had to go through

3

an amendment process to the State consolidated plan, which included public notice and comment. In 2010, Mary's House's application for ESG funding was denied because it was no longer a qualified shelter under the State's revised definition. In 2011, Mary's House's application was again denied. According to Plaintiffs, Mary's House had to cut back on services offered to its residents, reduce staff, change thermostats to lower utility bills, and delay or forego maintenance of its facilities as a result of the denial of ESG funding.

Plaintiffs allege that Defendants' redefinition of "shelter" impermissibly discriminates on the basis of disability or handicap. Defendants assert several defenses in return, including sovereign immunity and the statute of limitations, and contend both that Plaintiffs have failed to allege sufficient facts to state a claim for relief and that Defendants' action did not discriminate impermissibly.

## II. ANALYSIS

### A. 12(b)(1) Motion to Dismiss

The plaintiff bears the burden of proving this court's subject matter jurisdiction. <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991). When assessing a challenge to subject matter jurisdiction, the court may look beyond the face of the complaint and consider other evidence outside the pleadings without converting the

4

motion into one for summary judgment.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  A court should dismiss for lack of federal subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Richmond, 945 F.2d at 768 (citation omitted).  Defendants move to dismiss on three grounds: Eleventh Amendment sovereign immunity, the statute of limitations, and lack of standing.  Each will be addressed in turn.

### 1.    Eleventh Amendment

Defendants assert they enjoy sovereign immunity under the Eleventh Amendment.  (Doc. 22 at 3-4, Doc. 28 at 2-3.)  The Fourth Circuit has not conclusively established whether a dismissal based on Eleventh Amendment immunity is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Andrews v. Daw, 201 F.3d 521, 524-25 n.2 (4th Cir. 2000).  However, Defendants characterize their Eleventh Amendment argument as jurisdictional, so the court will treat it as such.  See Johnson v. N.C. Dep't of Health and Human Servs., 454 F. Supp. 2d 467, 471 (M.D.N.C. 2006).

The Eleventh Amendment bars suits against states and any state instrumentality properly characterized as an "arm of the

5

state." _Regents of the Univ. of Cal. v. Doe_, 519 U.S. 425, 429-30 (1997).   Eleventh Amendment immunity is not absolute, however.   To ensure the enforcement of federal law, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." _Frew ex rel. Frew v. Hawkins_, 540 U.S. 431, 437 (2004) (citing _Ex parte Young_, 209 U.S. at 123).   Federal courts are thus allowed to order prospective relief, including ancillary measures, but cannot order retrospective relief, such as damages, unless the state waives its immunity or Congress abrogates the state's immunity in exercising its powers under the Fourteenth Amendment.   _Id._; _Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd._, 527 U.S. 666, 670 (1999).   A plaintiff may properly invoke the doctrine of _Ex parte Young_ when a "straightforward inquiry" reveals that the plaintiff has alleged an "ongoing violation" of federal law.   _Verizon Md., Inc. v. Pub. Serv. Comm'n of Md._, 535 U.S. 635, 645 (2002) (citation omitted).

Plaintiffs do not clearly delineate in the complaint which of their claims they assert against which Defendants.   To the extent the complaint seeks relief against the State of North Carolina, DHHS, DAAS, or OEO for violations of the FHA or U.S. Constitution pursuant to 42 U.S.C. § 1983, such claims are barred by Defendants' assertion of sovereign immunity.   The FHA

6

does not abrogate states' sovereign immunity under the Eleventh Amendment, see, e.g., Gregory v. S.C. Dep't. of Transp., 289 F. Supp. 2d 721, 724-25 (D.S.C. 2003), and Defendants have not waived their immunity. Similarly, "[i]t is now well settled that a state cannot be sued under [42 U.S.C.] § 1983." Kelly v. Maryland, 267 Fed. App'x 209, 210 (4th Cir. 2008) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).[1] Thus, any claims against those defendants for violations of the FHA or section 1983 are barred; Defendants' motion to dismiss those claims is granted.

However, Plaintiffs' claims against those Defendants for violations of the RA and ADA stand on a different footing. Congress has validly abrogated states' immunity for violations of the RA through 42 U.S.C. § 2000d-7: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the [RA.]" The Fourth Circuit has held section 2000d-7 to be "an unambiguous and unequivocal condition requiring waiver of Eleventh Amendment immunity" that "does not violate any other constitutional command." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 492 (4th

---

[1] See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

Cir. 2005). Title II of the ADA may also validly abrogate states' sovereign immunity.[2] Constantine, 411 F.3d at 490. Insofar as Plaintiffs also allege a Fourteenth Amendment violation, the court will permit the ADA claim to proceed at this stage. United States v. Georgia, 546 U.S. 151, 159 (2006).

In addition to those claims against the State and its agencies, Plaintiffs sued State officials in their official capacities for violations of federal law. To the extent Plaintiffs seek injunctive relief against those officials for violations of the ADA, RA, FHA, and U.S. Constitution, such claims fall under the doctrine of Ex parte Young. Defendants argue that such claims should not be permitted because Plaintiffs do not allege an ongoing violation of federal law, as the doctrine requires. Defendants assert that their one-time decision to change funding practices cannot be "ongoing."

However, a straightforward inquiry reveals that Plaintiffs *are* alleging an ongoing violation of federal law. Verizon Md., 535 U.S. at 645 (holding that a prayer for injunctive relief satisfies the straightforward inquiry as to whether a violation is ongoing). Plaintiffs are seeking injunctive relief, and indeed, if Defendants' redefinition of "shelter" violates

---

[2] The Fourth Circuit has not yet considered what effect United States v. Georgia, 546 U.S. 151 (2006), has on its holding in Constantine, but as Defendants do not raise the point, the court will discuss it no further.

federal law, as Plaintiffs contend, then Defendants' continued enforcement of its definition would be unlawful.

Plaintiffs also seek damages from the State officials in their official capacities. Defendants are correct that Ex parte Young does not provide a basis for Plaintiffs to do that. (Doc. 28 at 2.) However, Plaintiffs seek damages pursuant to 42 U.S.C. § 2000d-7 and 29 U.S.C § 794a. The analysis is the same as it was for the State Defendants. State officials acting in their official capacities are not immune from federal suits to enforce section 504 of the RA. Constantine, 411 F.3d at 491-92. Plaintiffs allege, and Defendants do not refute, that Defendants accepted federal HUD funds through the ESG program. That acceptance of funds waived Eleventh Amendment immunity to section 504 claims for damages. As with the State Defendants, Title II of the ADA may also validly abrogate sovereign immunity, to the extent that Plaintiffs allege conduct that also violates the Fourteenth Amendment. Id. at 490; Georgia, 546 U.S. at 159. Thus, the court will permit the ADA claims against the State officials to proceed at this time.

To the extent Plaintiffs seek damages from State officials for violations of the FHA or U.S. Constitution pursuant to 42 U.S.C. § 1983, such claims are barred by sovereign immunity. As explained above, the FHA does not abrogate states' sovereign immunity, and section 1983 does not give plaintiffs the right to

9

sue state officials in their official capacities for damages.
See Will, 491 U.S. at 71.

The court has considered all of Defendants' remaining arguments, including that based on legislative immunity,[3] and finds they are without merit.

In sum, all claims against the State of North Carolina, DHHS, DAAS, or OEO for violations of the FHA or U.S. Constitution pursuant to section 1983 are barred by sovereign immunity; Plaintiffs' claims against those Defendants for violations of the RA and ADA are not barred. All claims against the remaining Defendants (all state officials) for damages for violations of the FHA and U.S. Constitution pursuant to section 1983 are barred by sovereign immunity; Plaintiffs' claims against those Defendants for damages under the RA and ADA and injunctive relief under the RA, ADA, FHA, and U.S. Constitution are not barred.[4]

---

[3] Defendants argue that they are entitled to legislative immunity from section 1983 actions. (Doc. 28 at 2-3.) The sole case they cite, however, is inapplicable. In Bogan v. Scott-Harris, the acts the plaintiff challenged were city council members introducing an ordinance and voting on it, and the mayor signing it into law. 523 U.S. 44 (1998). Such acts are "quintessentially legislative" and are therefore entitled to absolute legislative immunity. Id. at 55. Legislative immunity is extended to executive branch officials only when they are performing legislative functions, such as signing a bill into law. Id. Here, Defendants were not performing any legislative function, but were managing the disbursement of federal funds through a state-run program – a quintessentially administrative function.

[4] Claims against a governmental agency and its director in his or her official capacity may be duplicative. See, e.g., Love-Lane v. Martin,

## 2. Statute of Limitations

Defendants assert that Plaintiffs' claims under the ADA, RA, and FHA are barred by two-year statutes of limitations; they do not raise any such defense as to the constitutional claims. (Doc. 22 at 4-6.) Plaintiffs respond that, even assuming a two-year statute of limitations, their action did not accrue until late February 2010 at the earliest and, therefore, the complaint was timely filed. (Doc. 27 at 6-9.)

Neither Title II of the ADA nor section 504 of the RA has a specific limitations period, so the Fourth Circuit has borrowed the state statute of limitations for the most analogous state law claim. A Soc'y Without a Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011), cert. denied, 132 S. Ct. 1960 (2012); McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 129 (4th Cir. 1994). For North Carolina, that statute is the Persons with Disabilities Protection Act, N.C. Gen. Stat. 168A, which includes a two-year statute of limitations for non-employment related actions. J.W. v. Johnston Cnty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012); N.C. Gen. Stat. § 168A-12. The FHA includes a specific limitations period of two years. 42 U.S.C. § 3613(a)(1)(A).

---

355 F.3d 766, 783 (4th Cir. 2004). Because Defendants do not raise the point, the court will not address it.

Although the limitations period may be borrowed from state law, the determination of the time that a claim accrues is a matter of federal law. A Soc'y Without a Name, 655 F.3d at 348. A claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Id. (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)).

Defendants argue that DHHS' change of policy (rather than its specific denial of Mary's House's application) should serve as the injury triggering accrual. Even assuming that as true, however, dismissal of the complaint as time-barred is not warranted at this stage. Contrary to Defendants' assertions, the injury that is the basis of this action cannot be the December 14, 2009 letter announcing that DHHS would not be providing funding for SARCs. According to the allegations of the complaint, DHHS could not implement the changes announced in its letter until it issued public notice of the change, held at least one public hearing (which occurred on February 9, 2010), allowed for a public comment period of at least thirty days, and submitted an amendment to the State's consolidated plan. (Doc. 1 ¶¶ 59-61.) Accepting those facts as true, as the court must at this stage, Plaintiffs' claim would not have been ripe, and thus could not have accrued, until DHHS' action was final.

12

Only final agency actions are ripe for judicial review.[5] Whether an agency action is final depends on two conditions: "First, the action must mark the 'consummation' of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citations omitted); see also Syngenta Crop Prot., Inc. v. U.S. Envtl. Prot. Agency, 202 F. Supp. 2d 437, 446 (M.D.N.C. 2002).

The December 14, 2009 letter lacked legal force until the change in policy contemplated by it had been incorporated as an amendment to the State's consolidated plan. On December 15, 2009, DHHS could no more enforce the letter than Plaintiffs could complain they had been injured. At the earliest, Plaintiffs' claims against Defendants did not accrue until the day DHHS had fully completed the rulemaking and amendment process or, in other words, took final agency action from which legal consequences flowed. That the agency action became final before February 17, 2010 - the date two years before Plaintiffs filed their complaint - certainly does not "clearly appear[] on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d

---

[5] To hold otherwise would be to "render an advisory opinion in its most obnoxious form." Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948).

458, 464 (4th Cir. 2007) (alterations in original) (citation omitted). Thus, Defendants' motion to dismiss on grounds of statute of limitations will be denied.[6]

### 3. Standing

Defendants contend that Mary's House lacks standing because HUD has redefined the ESG program to focus on permanent housing, and therefore, as a homeless shelter, Mary's House lacks an interest in the HUD funding. (Doc. 22 at 7-8.) They also contend that Mary's House cannot pursue the case through associational standing both because it is not a membership organization and because the would-be members (the Jane Doe Plaintiffs) lack standing. (Id. at 8.) According to Defendants, the Jane Does lack a cognizable interest in the HUD funding because only shelters, not individuals, can apply for the HUD funding. (Id. at 2, 8.)

Defendants' arguments fail for several reasons. First, Defendants base their argument as to HUD's redirected focus on information not in the complaint. Whether HUD has changed the focus of the ESG program is not a question properly before the court at this stage. The complaint specifically alleges that North Carolina homeless shelters may apply for ESG funding and

---

[6] Contrary to Defendants' assertions, the fact that Plaintiffs allege that Defendants had already made their decision before completing the amendment process and would not be swayed by the comments given during the public comment period does not change the analysis. (Doc. 1 ¶¶ 64, 67; Doc. 28 at 3) Legally, Defendants were not permitted to implement the amendment until the amendment process was completed.

14

receive it, but Mary's House could not because of its status as a SARC. (Doc. 1 ¶ 70.) Insofar as the court must assume that the well-pleaded allegations of the complaint are true, Mary's House has alleged an actual, concrete, and particularized injury that is fairly traceable to Defendants' conduct and that can be redressed by a favorable decision from this court.

Second, Mary's House is a 501(c)(3) non-profit entity that can sue and be sued in its own right. (Doc. 1 ¶¶ 9, 42.) Although it asserts associational standing in addition to standing in its own right (id. ¶ 43), its claim of associational standing is superfluous. As explained above, the facts alleged in the complaint are sufficient at this stage to find that Mary's House has standing in its own right.

Third, the Jane Does do not lack standing simply because they personally cannot apply for the ESG funding. The question is whether they have (1) an injury in fact to a legally protected interest (2) caused by the conduct complained of (3) which is likely to be redressed by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Defendants assert, without explanation or citation, that the Jane Does lack a legally cognizable interest in the ESG funds. (Doc. 22 at 8.) Yet, the complaint alleges myriad violations of the Jane Does' rights and details the adverse effects that the Jane Does have suffered because of Defendants'

15

denial of funding. (Doc. 1 ¶¶ 29-33.) The Jane Does would be able to bring suit against Defendants even if Mary's House were not party to the litigation, as it is undisputed that Mary's House applied for funding in 2010 and 2011 and Defendants admit that the funding application process was non-competitive. (Doc. 22 at 15.) The Jane Does do not assert a vague or speculative injury. Cf. Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 321 (4th Cir. 2002) (finding that an unspecified "liberty interest in access to [plaintiffs'] community, and in continuation of their community" was not a legally protected interest). Instead, the complaint alleges that the denial of funding, which was virtually assured to all qualified shelters who applied, discriminated against the Jane Does on the basis of their disabilities and against Mary's House because it serves disabled people. (Doc. 1 ¶¶ 4, 37, 39, 41.) The complaint has thus alleged facts sufficient to show that the Jane Does suffered an actual and particularized injury to a legally protected interest that was fairly traceable to Defendants' conduct. As with Mary's House, a favorable judicial decision would likely redress those injuries.

In sum, Mary's House and the Jane Doe Plaintiffs have alleged sufficient facts to find they have standing to pursue the action at this stage.

16

### B.   12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted).  A complaint fails if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### 1.   ADA, RA, and FHA Claims

To trigger the protections of the ADA, RA, and FHA, a plaintiff must allege a qualifying disability or handicap. Defendants contend that Plaintiffs have stated mere legal conclusions, without sufficient underlying facts, as to whether the Jane Does and other residents of Mary's House are "disabled" under the ADA or RA or "handicapped" under the FHA. (Doc. 22 at 10-12.)  Plaintiffs argue that Defendants misunderstand the pleading standard and that the complaint alleges sufficient facts. (Doc. 27 at 11-14.)

The parties agree that Plaintiffs have alleged that Mary's House's residents, including the Jane Doe Plaintiffs, are "recovering substance abusers."  (Doc. 22 at 10.)  Recovering from substance abuse addiction is "unquestionably" an impairment

17

under the ADA. <u>A Helping Hand, LLC v. Balt. Cnty., Md.</u>, 515 F.3d 356, 367 (4th Cir. 2008). It is also an impairment under section 504 of the RA, which defines "disability" with reference to the ADA, 29 U.S.C. § 705(20)(B), and an impairment under the FHA, 24 C.F.R. § 100.201(a)(2) (specifying drug addiction as a FHA impairment in HUD's implementing regulations). <u>See also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 46 (2d Cir. 2002).

But simply having an impairment is not enough to trigger protection under these statutes. The impairment must substantially limit a major life activity. <u>See</u> 42 U.S.C. § 12102; 29 U.S.C. §§ 794(a), 705(20)(B); 42 U.S.C. § 3602(h). At the pleading stage, the court may infer from the fact that a residential rehabilitation center provides housing to substance abusers who would otherwise be homeless that they are "limited in their ability to work, raise children, care for themselves, and function in everyday life[.]" <u>Start, Inc., v. Balt. Cnty., Md.</u>, 295 F. Supp. 2d 569, 577 (D. Md. 2003) (finding that it was "reasonable to assume" at the pleading stage that the heroin addicts the residential rehabilitation center would have served were substantially limited in major life activities because they would have needed the services of the methadone clinic to prevent a relapse) (citing cases); <u>see also Reg'l Econ. Cmty. Action Program</u>, 294 F.3d at 47-48 (finding that alcoholics

18

living in a proposed halfway house would have been disabled, even though no individual patient was presented, because the "inability to live independently without suffering a relapse" would have been a requirement of residency). Although the facts alleged may be "meager," a complaint survives a motion to dismiss as long as it specifically refers to the underlying facts of the disability or perceived disability. <u>Blackburn v. Trustees of Guilford Technical Cmty. Coll.</u>, 733 F. Supp. 2d 659, 663 (M.D.N.C. 2010). It is "not required, at this early pleading stage, to go into particulars about the life activity affected by [the] alleged disability or detail the nature of [the] substantial limitations." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 213 (3d Cir. 2009) (noting that more specific disability allegations were not needed, even after <u>Twombly</u> and <u>Iqbal</u>).

Here, Plaintiffs have alleged that the facility's purpose is "housing, treating, training, educating, and supporting homeless women in recovery from substance abuse or addiction." (Doc. 1 ¶ 44.) They have further alleged that all of the Jane Does, as well as Mary's House's other residents, are recovering from substance abuse or addiction and that, before they were admitted to Mary's House, were "homeless" as defined by HUD. (<u>Id.</u> ¶ 28.) While more specific facts may be needed to survive a motion for summary judgment or to prevail at trial,

19

Plaintiffs' allegations are adequate at this stage to support the inference that the Jane Does and other residents had substance addictions that left them unable to care for themselves and their children and to live independently.

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "direct[s] that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although laws must inevitably draw some classifications, those classifications must be "rationally related to a legitimate state interest." Id. at 440. The parties in this case dispute two basic points: whether Mary's House is similarly situated to other homeless shelters and whether there is a rational basis for Defendants' action.

First, Plaintiffs assert that Defendants have created two classes of similarly situated homeless shelters in North Carolina, denying ESG funding to one class (those licensed to provide substance abuse treatment) but not to the other (those who are not). (Doc. 1 ¶¶ 112-15.) In response, Defendants contend that there is only one class of homeless shelters, defined by the rule Defendants adopted. (Doc. 22 at 13.) But Defendants' argument begs the central question of this litigation: Does the new definition of "shelter" adopted by Defendants improperly narrow coverage under the ESG program?

20

Defendants cannot rely on the rule being challenged in this action to say that Mary's House is by definition not a shelter. Plaintiffs have alleged that, according to HUD's ESG rules, Mary's House *is* a shelter and that it fits North Carolina's definition in every respect except for its status as a SARC. (Doc. 1 ¶ 112.) Taking those facts as true, Mary's House is similarly situated to other homeless shelters.

Defendants next assert that Mary's House cannot be both a homeless shelter and a licensed SARC, and, because Plaintiffs admit that it is the latter, it is therefore not similarly situated to other shelters. (Doc. 22 at 14-15.) Defendants present no information or argument as to why Mary's House cannot be both a homeless shelter and a SARC. Organizations may have multiple purposes and, indeed, Plaintiffs allege that Mary's House has dual roles as both a homeless shelter and a SARC. (Doc. 1 ¶¶ 10, 112.) According to the complaint, the only way Mary's House differs from other homeless shelters that receive ESG funding is that it serves recovering substance abusers, who have a legally recognized disability. Whether such a difference should form the basis of a legitimate classification is a sufficient question to be addressed under Equal Protection Clause jurisprudence.

Finally, Plaintiffs argue that Defendants' "shelter" definition discriminates without a rational basis. (Doc. 1

¶¶ 112-15.)  Defendants present a rational basis in response:
SARCs have access to state and federal funding that non-SARC
homeless shelters do not, and so to maximize funding for those
other shelters, Defendants excluded SARCs from the definition of
"shelter."  (Doc. 22 at 15-16.)

The Fourth Circuit recently had to reconcile "the dilemma
created when the rational basis standard meets the standard
applied to a [12(b)(6)] dismissal[.]"  Giarratano v. Johnson,
521 F.3d 298, 303 (4th Cir. 2008) (citation omitted) (internal
quotation marks omitted).  The rational basis standard sets a
high bar for a plaintiff: The government's action is presumed
valid and a plaintiff must "negate every conceivable basis which
might support" the law.  Id. (quoting Lehnhausen v. Lake Shore
Auto Parts Co., 410 U.S. 356, 364 (1973)).  The pleading
standard, however, simply requires the plaintiff to allege
sufficient facts, accepted as true, to "state a claim to relief
that is plausible on its face."  Twombly, 550 U.S. at 570.  To
resolve this dilemma, the Fourth Circuit adopted the reasoning
of a case from the Seventh Circuit:

> While we therefore must take as true all of the
> complaint's allegations and reasonable inferences that
> follow, we apply the resulting "facts" in the light of
> the deferential rational basis standard.  To survive a
> motion to dismiss for failure to state a claim, a
> plaintiff must allege facts sufficient to overcome the
> presumption of rationality that applies to government
> classifications.

*Giarratano*, 521 F.3d at 303-04 (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). In applying that standard to *Giarratano*'s facts, the Fourth Circuit found a prisoner's conclusory assertions that a law excluding inmates from obtaining information through the Freedom of Information Act had no rational basis was insufficient to overcome the presumption of rationality. *Id.* at 304.

Plaintiffs do more than present conclusory assertions, however. They allege that Mary's House was excluded from the definition of "shelter" solely on the basis that it serves disabled people, who, while not a suspect class, have suffered recognized irrational discrimination in the past. *Cleburne*, 473 U.S. at 450. Plaintiffs further allege that (1) when Defendants solicited public comment on the rule change, all public comment opposed the change; (2) Defendants never responded substantively to the public comments; and (3) Defendants never "provided any written 'reasons' or explanation to Mary's House or other commenters addressing how the amendment to the ESG program was not discriminatory." (Doc. 1 ¶¶ 62-66 (emphasis in original).) While Defendants articulate a rational basis in their motion to dismiss (Doc. 22 at 15-16), no evidence or allegation of a rational basis appears in the complaint. The complaint therefore alleges sufficient facts to "overcome the presumption of rationality" at this early stage. *Giarratano*, 521 F.3d at

23

304 (quoting Wroblewski, 965 F.2d at 460). Whether Plaintiffs can ultimately meet the high bar in proving Defendants lacked any rational basis for the "shelter" definition remains to be seen.

### 3. Due Process Clause

The Due Process Clause of the Fourteenth Amendment prevents states from depriving people of life, liberty, or property without due process of law. Plaintiffs allege that Defendants deprived them of their property interest in the ESG funds without due process. (Doc. 1 ¶ 122.) Unsure of whether Plaintiffs allege a violation of substantive or procedural due process, Defendants chronicle the procedural protections Mary's House received before its funding application was denied. (Doc. 22 at 16-17.) But Defendants ultimately argue that, regardless of which kind of due process Plaintiffs claim to have been deprived of, Plaintiffs would need to prove the existence of a protected property interest and they have failed to do so. (Id. at 17-18.)

Defendants are correct that Plaintiffs must prove the existence of a protected property interest in either inquiry. See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322, 328 (4th Cir. 2005) (citing Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 826-27 (4th Cir. 1995)) (setting out the elements of each claim). The Constitution does

24

not create property interests; such interests must "stem from an independent source such as state law[.]"  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); see also Gardner v. City of Balt. Mayor & City Council, 969 F.2d 63, 68 (4th Cir. 1992).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

The Fourth Circuit has interpreted that "legitimate claim of entitlement" to turn on whether the government exercised discretion in granting or denying some benefit.  Gardner, 969 F.2d at 68-69.  Gardner adopted a standard recognizing a property interest "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured."  Id. at 68 (quoting RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989)).[7]

---

[7] Defendants note that the Fourth Circuit has questioned whether Gardner's no-discretion standard should apply outside the land use context. (Doc. 28 at 6-7.)  Love v. Pepersack, 47 F.3d 120, 123 (4th Cir. 1995) (assuming without deciding that plaintiff had property interest).  However, the Fourth Circuit and its district courts continue to find the extent of discretion in a state actor's decision to be a critical factor in determining whether a property interest exists.  See, e.g., Appiah v. I.N.S., 202 F.3d 704, 709 (4th Cir. 2000); City-Wide Asphalt Paving, Inc. v. Alamance Cnty., 966 F. Supp. 395, 400-01 (M.D.N.C. 1997); Johnson v. Fernandez, Civ. No. PJM 10-01719, 2011 WL 3236057, at *4 (D. Md. July 26, 2011).

In the present case, Plaintiffs allege, and Defendants admit, that the process for allocating ESG funds is non-competitive. (Doc. 22 at 15.) Every qualified applicant receives its share of the funds. (Doc. 1 ¶ 55.) Mary's House was a qualified applicant and received funds each year from 2005 to 2009 and only stopped being a qualified applicant because Defendants redefined "shelter." (Id. ¶ 3.) Because the process is non-competitive, qualified applicants are "virtually assured" of receiving funding. Mary's House thus had a legitimate claim of entitlement to those funds, and the Jane Does had a legitimate claim of entitlement that the organization providing their services would receive them. Whether their claim is ultimately based on substantive or procedural due process, then, Plaintiffs have sufficiently alleged that they have a protected property interest in the ESG funds.[8]

### 4. Supremacy Clause

Plaintiffs allege that Defendants, as recipients of federal funding, must abide by federal requirements for how that funding is distributed and that their failure to do so violates the Supremacy Clause of the U.S. Constitution. (Doc. 1 ¶¶ 104-08.)

---

[8] To the extent Plaintiffs' response brief (Doc. 27 at 17) and Defendants' reply (Doc. 28 at 7) address a potential arbitrary deprivation of a property right in a manner that furthered no legitimate governmental purpose, the court declines to address it because Defendants did not raise that issue as grounds for dismissal in its motion to dismiss.

Plaintiffs argue that states cannot impose eligibility standards for federal funds that entirely exclude certain entities that would otherwise receive those funds. (Doc. 27 at 19.) Defendants contend that North Carolina's rule comports with federal law; to prove that point, Defendants offer, without citation, the fact that HUD approved of the State's amended plan and that Defendants adhered "to the changes to the federal rules." (Doc. 22 at 19-20.) Defendants also argue that states have substantial discretion to narrow the scope of the federal funding they disburse. (Doc. 28 at 7.)

Whether HUD approved North Carolina's amended plan does not appear in the complaint (nor do Defendants contend it is a fact of which the court should take judicial notice), and Defendants cannot introduce new facts to support their motion to dismiss. Similarly, it is unclear what Defendants mean by "adherence to the changes to the federal rules," but if Defendants are referencing HUD's purported change of focus for the ESG program, that, too, does not appear in the complaint. Taking the allegations of the complaint as true for the purposes of the present motion, Plaintiffs have alleged a violation of federal requirements in administering the ESG program. As such, Plaintiffs have stated a claim under the Supremacy Clause.

## III. CONCLUSION

For the reasons stated, the court finds that Plaintiffs' claims are barred by sovereign immunity to the extent they seek recovery against the State of North Carolina, DHHS, DAAS, and OEO for violations of the FHA or U.S. Constitution pursuant to section 1983 and seek damages from the remaining defendants (all state officials) for violations of the FHA and U.S. Constitution pursuant to section 1983. In all other respects, Defendants' motion to dismiss is denied.

IT IS THEREFORE ORDERED that the Defendants' motion to dismiss (Doc. 21) is GRANTED as to all claims against the State of North Carolina, DHHS, DAAS, and OEO for violations of the FHA or U.S. Constitution pursuant to section 1983, and all claims for damages against the remaining defendants (all state officials) for violations of the FHA and U.S. Constitution pursuant to section 1983. In all other respects, Defendants' motion to dismiss is DENIED.

 /s/   Thomas D. Schroeder
United States District Judge

September 30, 2013